**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DYTAUN MONTGOMERY,                    :
                                      :
        Plaintiff,                    :
                                      :    Civil Action No.:    22-1715 (RC)
        v.                            :
                                      :    Re Document No.:    38
DOUGLAS A. COLLINS,                   :
Secretary of Veterans Affairs,        :
                                      :
        Defendant.                    :

<u>**MEMORANDUM OPINION**</u>

**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Dytaun J. Montgomery brings this employment discrimination action under the Rehabilitation Act, 29 U.S.C. §§ 791 *et seq.*, against Douglas A. Collins in his official capacity as Secretary of Veterans Affairs.[1]  In March 2024, the Court denied Defendant's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Ms. Montgomery's discrimination claims alleging disparate treatment and a hostile work environment based on her hearing impairment.  The parties have completed discovery, and Defendant now moves for summary judgment under Rule 56.  For the reasons set forth below, the Court grants Defendant's motion for summary judgment.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Collins has been substituted for his predecessor.

## II.  BACKGROUND

Ms. Montgomery has hearing loss in her left ear.  Def.'s Statement of Material Facts

("Def.'s Facts") ¶ 2, ECF No. 38-23; Pl.'s Resp. to Def.'s Statement of Material Facts ("Pl.'s

Facts") ¶ 2, ECF No. 41-1; Sworn Decl. of Dytaun Montgomery ("Pl.'s Decl.") ¶ 2, ECF No. 41-

2.[2]  Her condition requires her to adjust her head or position herself to hear conversations and

has caused her to experience vertigo.  Pl.'s Decl. ¶ 2.  In December 2015, the Washington D.C.

Veterans Affairs Medical Center hired Ms. Montgomery under Schedule A[3] as a General

Schedule level 6 ("GS-6") human resources assistant.  Def.'s Facts ¶ 1.  Her first-line supervisor

was Cheryl Ann Williams, who has a disability.  *Id.* ¶¶ 9–10.  In December 2016, the

Department of Veterans Affairs (the "Department" or "VA") promoted Ms. Montgomery to a

GS-7 human resources assistant.  *Id.* ¶ 14.  And in July 2017, the Department appointed her to a

GS-7 human resources specialist position.  *Id.* ¶ 15.  But there were procedural errors in that

appointment that caused some later administrative challenges.  *See id.* ¶¶ 20–21.[4]

Near the end of fiscal year 2017, Ms. Montgomery's supervisor left the Department.  *Id.*

¶ 59.  Ms. Montgomery received her performance appraisal for 2017 on July 31, 2018, months

after the time she should have received it.  *See id.* ¶ 60; Pl.'s Facts ¶ 60.  She received a "fully

successful" rating, but did not receive a cash award.  Def.'s Facts ¶¶ 61, 63; Pl.'s Facts ¶¶ 61, 63;

---

[2] In ruling on this motion for summary judgment, the Court assumes the truth of all uncontested facts identified in Defendant's "Statement of Undisputed Material Facts."  *See* Local Civ. R. 7(h)(1).

[3] Schedule A allows a federal agency to non-competitively "appoint, on a permanent, time-limited, or temporary basis, a person with an intellectual disability, a severe physical disability, or a psychiatric disability."  5 C.F.R. § 213.3102(u)(1).

[4] Ms. Montgomery does not contest that there were procedural errors in her appointment, Pl.'s Opp'n at 4, ECF No. 41; Pl.'s Resp. to Def.'s Reqs. for Admis. ("RFA") No. 6, ECF No. 38-7, but does dispute whether "a regularization process" was necessary, *see* Pl.'s Facts ¶¶ 20–21; Pl.'s Decl. ¶ 12.

RFA No. 3.  The appraisal she received contained certain inaccuracies, including her GS level and her former last name from before her marriage, so she refused to sign it.  Pl.'s Decl. ¶ 26; Pl.'s Dep. 98:5–11, ECF No. 38-2.

To explain why Ms. Montgomery did not receive a cash award for fiscal year 2017, the Department has submitted a December 9, 2016 message from the Department Secretary explaining that total awards were cut about 30% that year due to spending caps set in the Comprehensive Addiction & Recovery Act of 2016.  Def.'s Facts ¶ 64 (citing Ex. 19, ECF No. 38-19).[5]

When asked at her deposition whether she received a late and inaccurate appraisal because of her disability, Ms. Montgomery responded, "I never contended that had anything to do with my disability."  Pl.'s Dep. at 100:16–20.  In her declaration in opposition to summary judgment, however, she states that "when viewed in the broader context of discriminatory conduct, the overall treatment was rooted in animus toward [her] disability and Schedule A status."  Pl.'s Decl. ¶ 29.

In July 2018, Charlene McCollum, a human resources officer, advised Ms. Montgomery and three other employees who were appointed under the same GS-07 human resources specialist position announcement about the procedural errors in their appointments.  Def.'s Facts ¶ 20; Pl.'s Facts ¶ 20 (disputing only whether a regularization process was necessary).  Ms. McCollum expressed her view that the Department was "required to either cancel or regularize

---

[5] In her opposition brief, Ms. Montgomery claims this document was "improperly added to the record" after discovery closed, but provides no legal citations or further argument.  *See* Pl.'s Opp'n at 10, ECF No. 41.  The Court therefore considers this argument waived.  *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived.").

the actions," and that she was awaiting an accurate and classifiable position description to begin

the regularization process.  *See* Ex. 8, July 31, 2018 McCollum Email, ECF No. 38-8.

In September 2018, Taneshia Horton was transferred from the VA Capitol Health Care

Network to the Washington D.C. Veterans Affairs Medical Center as an Assistant Human

Resources Officer, and she became Ms. Montgomery's second-line supervisor.  Def.'s Facts

¶¶ 11, 13; Ex. 4 ¶¶ 4–6, Horton Aff., ECF No. 38-4.  Ms. Horton also has a disability.  Def.'s

Facts ¶ 12.  That month, Ms. Montgomery learned that Ms. Horton had stated that Schedule A

employees should be terminated at a meeting from which Ms. Montgomery had been excluded.

Pl.'s Decl. ¶ 5.  The next month, during a conversation between Ms. Montgomery and Cheryl

Williams, an HR Supervisor, Ms. Williams raised her voice, and when another employee asked

which side Ms. Montgomery's good ear was on, Ms. Williams said, "she cannot hear."  *Id.* ¶ 6.

After that interaction, Ms. Horton asked Ms. Montgomery if she had a disability.  *Id.*  Ms.

Montgomery believes that these incidents "created a hostile work environment."  *Id.* ¶ 7.

In February 2019, after delays in receiving a corrected position description, Ms.

Montgomery reapplied for her position non-competitively, a process she described as not

"strenuous," albeit "stressful."[6]  Pl.'s Dep. at 52:10–15; Def.'s Facts ¶¶ 25–26; Pl.'s Facts ¶¶ 25–

26.  "[A]t least two of the four individuals who were asked to reapply were not impaired."

Def.'s Facts ¶ 29.  In the months of February and March 2019, numerous corrections were made

to Ms. Montgomery's personnel file to regularize her appointment.  *See id.* ¶¶ 30–37.  A human

resources specialist advised Ms. Montgomery that she could decline the regularized position, but

that if she did, the erroneous action would be cancelled, and she would return to her prior human

---

[6] Ms. Montgomery argues that the Department policies did not mandate reapplication, so
requiring reapplication was a deviation from those policies.  Pl.'s Opp'n at 7.

resources assistant position. *Id.* ¶ 35. During the regularization process, Ms. Montgomery

continued performing her human resources specialist work. *Id.* ¶ 36. In the end, Ms.

Montgomery's Standard Form 50 ("SF-50") did not need to be cancelled, and the corrections

were made to it, with an effective date of her appointment remaining as July 23, 2017, the date

she was initially selected for the job. *Id.* ¶¶ 33, 38–39. Plaintiff testified at her deposition that

her disability was not the reason that the Department asked her to reapply to regularize the

erroneous appointment. *Id.* ¶ 43.

On August 8, 2019, the Department retroactively promoted Plaintiff, effective July 22,

2018, from a GS-07 to a GS-09 human resources specialist position, which included a raise of

about $9,000. *Id.* ¶ 40. Defendant cites Ms. Montgomery's deposition testimony and Request

for Admissions Responses for the proposition that she received full backpay, credit for all time

served, and was made whole. *Id.* ¶ 41. Ms. Montgomery states she "is still owed within-grade

increases," but provides no citation for this point. *See* Pl.'s Facts ¶ 41. Regardless, the parties

do not dispute that Ms. Montgomery testified that her disability was not the reason her credit

time and promotion were delayed. Def.'s Facts ¶ 44. Nor do they dispute that Ms. Montgomery

was later promoted to the GS-11 level. *Id.* ¶ 42.

"Following her efforts to pursue administrative remedies, Ms. Montgomery brought this

action on June 14, 2022, alleging several different discrimination claims, including race, gender,

and disability discrimination." *Montgomery v. McDonough* ("*Montgomery II*"), No. 22-cv-1715,

2024 WL 1344443, at *4 (D.D.C. Mar. 29, 2024); *see* Compl. at 12–20, ECF No. 1. After

granting Defendant's Rule 12(b)(6) motion in 2023, the Court granted Ms. Montgomery leave to

file an amended complaint. *Montgomery v. McDonough*, 682 F. Supp. 3d 1, 19 (D.D.C. 2023).

Ms. Montgomery filed her Amended Complaint in August 2023, alleging two closely related

disability discrimination claims under the Rehabilitation Act: a disparate treatment claim and a

hostile work environment claim.  *See* Am. Compl. at 12–14, ECF No. 22.

Defendant again moved to dismiss under Rule 12(b)(6), but this time, the Court

concluded that Ms. Montgomery's narrowed claims survived.  *Montgomery II*, 2024 WL

1344443, at *5.  Specifically, the Court concluded that certain alleged conduct could constitute

adverse actions, including (1) "that Ms. Montgomery did not receive a 2017 performance

appraisal and that her failure to receive that appraisal prevented her from obtaining a cash

award;" (2) "that she should have been promoted immediately upon her rehiring," and that it was

"easy to infer that Ms. Montgomery's prospects for promotion would eventually be adversely

affected if her 20 months of experience in the role were no longer credited in her employment

records;" and (3) that if "Ms. Montgomery did not actually need to reapply for her position for

the Department to regularize it," she had pleaded enough to allege that "the Department's

approach to rehiring her was an adverse action."  *Id.* at *8–9.  The Court also found that Ms.

Montgomery had met her burden at the pleading stage of plausibly alleging that these actions

were based on her disability, noting "that two different supervisors allegedly expressed hostility

against Ms. Montgomery that was connected to her disability, one of those supervisors

reportedly took issue with hiring Schedule A disabled employees, the other supervisor failed to

give Ms. Montgomery a proper performance appraisal, and another employee forced Ms.

Montgomery to unnecessarily reapply for her job."  *Id.* at *11.  As for her hostile work

environment claim, the Court determined that this claim "narrowly survive[d]."  *Id.* at *12.  First,

the Court found that even "assuming that her unpleasant interactions with Ms. Horton and Ms.

Williams were motivated by anti-disability animus . . . these conflicts alone are too minor to state

a claim."  *Id.*  But, when combined with "the reapplication process and the failure to receive a

performance appraisal," the Court concluded that Ms. Montgomery had pleaded a plausible claim of a hostile work environment, and denied Defendant's motion to dismiss.  *Id.* at *13.

After discovery, Defendant moved for summary judgment.  Def.'s Mot. Summ. J. ("MSJ"), ECF No. 38.  Defendant argues that Ms. Montgomery is not disabled within the meaning of the Rehabilitation Act, that she has not experienced any harm required to state a claim, that she has failed to provide evidence that her disability was the reason the Department took the alleged adverse actions, and that there is no evidence of severe or pervasive discriminatory conduct to support a hostile work environment claim.  *Id.* at 1–2.  The motion is now fully briefed and ready for the Court's consideration.  *See* Pl.'s Opp'n, ECF No. 41; Def.'s Reply, ECF No. 42.

### III.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* "[T]he court must view the evidence 'in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in favor of the nonmoving party.'"  *Grosdidier v. Broad. Bd. of Governors*, 709 F.3d 19, 23–24 (D.C. Cir. 2013) (quoting *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011)).  To support that a fact is genuinely disputed, the non-moving party must cite to "particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  But summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23.

## IV.  ANALYSIS

The Court first analyzes the preliminary issue of whether Defendant is entitled to summary judgment because Ms. Montgomery has failed to provide evidence that she is disabled within the meaning of the Rehabilitation Act.  The Court concludes that there are material factual disputes that preclude summary judgment on this issue.  The Court then addresses Ms. Montgomery's disparate treatment and hostile work environment claims.  On both claims, the Court concludes that Ms. Montgomery has failed to meet her burden to establish a genuine material dispute that would warrant presenting her claims to a jury, and that Defendant is therefore entitled to summary judgment.

"The Rehabilitation Act of 1973 governs employee claims of [disability] discrimination against the Federal Government."  *Ward v. McDonald*, 762 F.3d 24, 28 (D.C. Cir. 2014) (quoting *Barth v. Gelb*, 2 F.3d 1180, 1183 (D.C. Cir. 1993)).  The Act provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability" be discriminated against by a federal employer.  29 U.S.C. § 794(a).  Section 705(20) incorporates the definition of "individual with a disability" from the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102.  *Id.* § 705(20)(B).  "The standards used to determine whether [the Rehabilitation Act's nondiscrimination provision] has been violated . . . shall be the standards applied under . . . the Americans with Disabilities Act . . . ."  *Id.* § 794(d).

"Because of the similarities between the Rehabilitation Act and the ADA, cases interpreting either are applicable or interchangeable." *Buie v. Berrien*, 85 F. Supp. 3d 161, 171 n.6 (D.D.C. 2015) (quoting *Alston v. Wash. Metro. Area Transit Auth.*, 571 F. Supp. 2d 77, 81 (D.D.C. 2008)). But one difference between the acts is that "the Rehabilitation Act has a clear 'but-for' causation standard whereby the disability must be 'the reason that the employer decided to act.'" *Montgomery II*, 2024 WL 1344443, at *6 (quoting *Rosen-Kellogg v. Mayorkas*, No. 22-cv-3028, 2023 WL 7697043, at *8 (D.D.C. Nov. 15, 2023)); *Drasek v. Burwell*, 121 F. Supp. 3d 143, 154 (D.D.C. 2015) ("For Rehabilitation Act claims, courts have found that the presence of the word 'solely' means that the causation element of intentional discrimination and retaliation claims brought under that Act cannot be satisfied by a motivating factor test; rather, the applicable analysis is the traditional 'but-for' causation standard.").

"[T]he two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). After this Court decided *Montgomery II*, the Supreme Court clarified that a Title VII plaintiff need only show "some harm" to establish an adverse employment action. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 350 (2024). Defendant argues that the "some harm" standard is applicable to Rehabilitation Act claims. MSJ at 14. Ms. Montgomery does not address the applicable standard in her opposition brief. *See* Pl.'s Opp'n at 16–17. As the Court previously noted, other courts in this District have extended the standard for an adverse employment action in the Title VII context to Rehabilitation Act claims. *Montgomery II*, 2024 WL 1344443, at *6–7 (citing *Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 50 (D.D.C. 2022)). The Court does so

here, but notes that this issue is not dispositive because the Court finds that Ms. Montgomery's claims fail on the "because of" element.

Discrimination claims brought under the Rehabilitation Act that are based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework. *Kersey v. Wash. Metro. Area Transit Auth.*, 586 F.3d 13, 16 (D.C. Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). Under that framework, the plaintiff has the initial burden of establishing her prima facie case of discrimination; then the defendant has the burden of producing evidence of a legitimate, nondiscriminatory reason for its actions. *Id.* at 16–17. If the defendant meets its burden, then to decide a motion for summary judgment, "the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis" of her protected trait? *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

### A.  Whether Ms. Montgomery has a "Disability"

Defendant moves for summary judgment on the issue of whether Ms. Montgomery has a disability under the meaning of the Rehabilitation Act. *See* MSJ at 10–13. Ms. Montgomery has at least presented enough evidence to create a genuine dispute, so the Court will not grant summary judgment on this basis.

The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). Under the ADA, "major life activities" include the activity of "hearing." *Id.* § 12102(2)(A). "An

impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."  29 C.F.R. § 1630.2(j)(1)(ii).

To argue that Ms. Montgomery has not demonstrated an impairment "that substantially limits one or more of the major life activities," Defendant lists the activities Ms. Montgomery testified she could do despite her hearing loss.  *See* MSJ at 11.  Those activities include "functioning in the workplace, caring for herself, living on her own, driving, shopping, travelling, going out to eat, sleeping, using a computer, writing a letter, exercising, [and] gardening."  *Id.*

But as Ms. Montgomery argues, the major life activity affected by her hearing loss in her left ear is "hearing."  *See* Pl.'s Opp'n at 12; 42 U.S.C. § 12102(2)(A).  Ms. Montgomery declares that her hearing impairment "requires [her] to adjust [her] head or position [her]self to hear conversations and has also caused vertigo."  Pl.'s Decl. ¶ 2.  Consistent with this declaration, she testified at her deposition that she had no problems hearing the questions, even without hearing aids, because she could hear by turning.  *See* Pl.'s Dep. at 137:4–10. She also declares that she has been treated by "qualified medical professionals" and that her Schedule A documentation confirming her disability "was signed by an otolaryngologist (ENT doctor)," Pl.'s Decl. ¶¶ 2–3, though the letter does not label the disability from which Ms. Montgomery suffers, Ex. 21, ECF No. 38-21.

Based on this record, the Court cannot say that no reasonable jury could conclude that Ms. Montgomery's hearing impairment substantially limits her ability to hear as compared to the general population.  Ms. Montgomery having to turn her head or body in order to hear is analogous to a monocular individual having to turn his head to see due to a diminished visual

field.  *See Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999) ("[T]he [ADA] requires monocular individuals, like others claiming the Act's protection, to prove a disability by offering evidence that the extent of the limitation in terms of their own experience, as in loss of depth perception and visual field, is substantial.").  This record evidence creates a dispute of material fact as to whether Ms. Montgomery's hearing loss is substantial and precludes summary judgment for Defendant on this issue.  Because the Court reaches this conclusion on the first definition of "disability" in 42 U.S.C. § 12102(1), the Court need not discuss the applicability of the other two definitions to resolve this motion.

### B.  Disparate Treatment Claim

As mentioned above, Ms. Montgomery's disparate treatment claim requires both (1) an adverse employment action and (2) that the action was taken because of her disability.  *See Baloch*, 550 F.3d at 1196.  Though the harm need not be significant, an employee must show at least "some harm" to establish an adverse employment action to support a discrimination claim.  *See Muldrow*, 601 U.S. at 350.  And the employee's disability must be the but-for cause of the adverse action.  *Montgomery II*, 2024 WL 1344443, at *6; *Drasek v. Burwell*, 121 F. Supp. 3d 143, 154 (D.D.C. 2015).

The Court previously identified possible adverse actions, including the delay in providing Ms. Montgomery with her 2017 performance appraisal, which was required for her to receive a cash award; and requiring Ms. Montgomery to unnecessarily reapply for her position, and then failing to credit her for time she had held the job and delaying her promotion.  *Montgomery II*, 2024 WL 1344443, at *7–9.  The Court addresses these actions and whether they were causally connected to Ms. Montgomery's disability.  At bottom, even accepting that those actions

constitute adverse employment actions, there is no genuine dispute that the actions were not taken because of Ms. Montgomery's disability, so Defendant is entitled to summary judgment.

### 1.  Late Performance Appraisal

As discussed above, the Court previously determined that there were "enough factual allegations to make clear that Ms. Montgomery did not receive a 2017 performance appraisal and that her failure to receive that appraisal prevented her from obtaining a cash award." *Id.* at *8. But Defendant has produced evidence that refutes that the lack of a cash award was linked to the delay of Ms. Montgomery's appraisal.  The parties do not dispute that Ms. Montgomery received a rating of "fully successful" for fiscal year 2017.  *See* ECF No. 41-3 at 18.[7]  And Ms. Montgomery does not argue that she deserved a higher rating.  *See* Pl.'s Opp'n at 17.  In December 2016, the VA Deputy Secretary sent an email explaining that total awards for fiscal year 2017 were cut about 30% from the previous year due to spending caps set by the Comprehensive Addiction & Recovery Act of 2016.  Ex. 19 at 1.  The guidance states also that, with exceptions not relevant here, "[a]ll rewards are discretionary" and that "award approving officials have the authority to decide that a type of award or particular award will not be paid." *Id.* at 4.  Defendant argues that Ms. Montgomery's "fully successful" rating did not warrant an award for that fiscal year.  MSJ at 24; Def.'s Reply at 10–11.

Ms. Montgomery disputes whether performance awards were "slashed at DC VAMC in 2017."  Pl.'s Facts ¶ 64.  Rather than submitting evidence to the contrary, she submitted the same email that Defendant cites with a portion of the header circled, indicating that a person in the Richmond VA Medical Center received the email.  *Compare* Ex. 19, *with* Pl.'s Ex. 2 at 24–29,

---

[7] For pincites to Exhibits attached to the parties' briefs, ECF Nos. 38-1 through 38-22, and ECF No. 41-3, the Court refers to the pagination assigned by the ECF system unless otherwise indicated.

ECF No. 41-3.  But nothing in the document suggests it is limited to the Richmond VA, rather than the VA broadly.  *See* Pl.'s Ex. 2 at 24–29.

Further, Ms. Montgomery has declared that two of her colleagues "received timely appraisals and corresponding awards."  Pl.'s Decl. ¶ 25.  But Ms. Montgomery does not state what rating those colleagues received.  And despite identifying inaccuracies in her appraisal, she has not listed her "fully sufficient" rating among them.  *See id.* ¶ 26; RFA No. 3; Pl.'s Dep. 98:5–11 (discussing that inaccuracies concerned her GS level and former last name).  Thus, the possibility that those colleagues received higher appraisals that justified their awards does not render Defendant's explanation pretextual.

Even were the Court to assume that Ms. Montgomery would have received a cash award had she received a timely performance review, she has presented no evidence connecting the delay to her disability.  The parties do not dispute that Ms. Montgomery's supervisor left the Department toward the end of fiscal year 2017, which is a legitimate, non-discriminatory explanation for a delayed performance appraisal.  *See* Def.'s Facts ¶ 59.  Further, as discussed above, the lack of payment of cash awards was tied to budgetary concerns, a legitimate factor Ms. Montgomery acknowledged during her deposition.  Pl.'s Dep. 104:5–15.

More importantly, Ms. Montgomery's own testimony refutes any causal connection between her disability and the delayed appraisal.  When asked at her deposition whether she received a late and inaccurate appraisal because of her disability, she responded, "I never contended that had anything to do with my disability."  Pl.'s Dep. 100:16–20.  Further, Ms. Montgomery explained that Ms. McCollum was the decision maker when it came to promotions and performance money, and confirmed that she was not claiming that Ms. McCollum discriminated against her.  Pl.'s Dep. 107:8-20; Ex. 20, Pl. Interrog. Ans. No. 8, ECF No. 38-20.

Ms. Montgomery now disputes whether "[a]s to the cash award, Ms. McCollum was the decisionmaker," and whether "Ms. McCollum discriminated against her based on her disability." *See* Def.'s Facts ¶ 66; Pl.'s Facts ¶ 66. To explain this dispute, she responds that "[o]ver time, Plaintiff received evidence that Schedule A and her disability became the focal point in Ms. Williams' decisions." Pl.'s Facts ¶ 66. On its face, this dispute does not appear genuine, as Defendant's statement pertains to Ms. McCollum, and Plaintiff's response pertains to Ms. Williams. *See id.* Ms. Montgomery also cites to a paragraph in her declaration and emails that have nothing to do with her 2017 performance appraisal. *See* Pl.'s Facts ¶ 66 (citing Pl.'s Decl. ¶ 43, Pl.'s Ex. 2 at 19–23). Thus, Ms. Montgomery has failed to cite to "particular parts of materials in the record" that would support that Ms. McCollum discriminated against Ms. Montgomery when she did not award her a performance cash award for fiscal year 2017. *See* Fed. R. Civ. P. 56(c)(1)(A); *see also Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007) (precluding "a party from creating an issue of material fact by contradicting prior sworn testimony" absent persuasive reasons for the contradiction).

Lastly, Ms. Montgomery argues that "similarly situated employees under the same supervisors did receive awards" despite budgetary constraints. Pl.'s Opp'n at 17. Ms. Montgomery previously identified HR Specialists Danika Parker and Lashawna Norman as purported comparators who were previously "supervised by Ebony Jerry and then later realigned under Cheryl Williams" and who "received their Fiscal Year-FY 2017 performance appraisals and monetary award in a timely manner." Ex. 20, Int. No. 8. But Ms. Montgomery failed to provide any evidence showing that these purported comparators are actually similarly situated, or different, in crucial ways. To succeed on a comparator theory of discrimination at summary judgment, there must be evidence to support that the comparator is "nearly identical." *Joyner v.*

*Morrison & Foerster LLP*, 140 F.4th 523, 530 (D.C. Cir. 2025); *McGill v. Munoz*, 203 F.3d 843, 848 (D.C. Cir. 2000) (citing *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995)).

For starters, Ms. Montgomery has failed to state, let alone identify record evidence supporting, that Ms. Parker or Ms. Norman received the same "fully successful" rating as Ms. Montgomery, rather than a higher rating of "excellent" or "outstanding."  *See* Pl.'s Opp'n at 9; Pl.'s Decl. ¶ 25; Pl.'s Ex. 2 at 18.  If they received higher ratings and cash awards, then this would support Defendant's argument that cash awards were reserved for superior performance. *See* MSJ at 23.  Second, Ms. Montgomery does not identify any evidence supporting that either purported comparator was not disabled.  *See* Pl.'s Opp'n at 9; Pl.'s Decl. ¶ 25.  In fact, a report prepared by Kimberlynn Davis supports that Ms. Norman was appointed under Schedule A authority.  *See* Ex. 12 at 3.  If other disabled employees who were part of this fact-finding report received cash awards despite their disabled status, this too would tend to defeat Ms. Montgomery's claim that her disability was the reason she did not receive an award. Accordingly, based on the evidence the parties have presented, the Court concludes that no reasonable jury could find that Defendant's delay in providing Ms. Montgomery her performance appraisal constituted disability discrimination.

### 2.  Reapplication Process and Delayed Credit Time and Promotion

The parties do not dispute that there were errors with Ms. Montgomery's July 2017 appointment.  *See* MSJ at 16; Pl.'s Opp'n at 4.  Rather, they dispute what steps, if any, were required to regularize her appointment.

As for the adverse action, Ms. Montgomery does not argue that having to reapply for her position was in itself harmful, but ties reapplication to the downstream effects of her delayed

promotion and denial of service credit. *See* Pl.'s Opp'n at 16–17. Specifically, she argues that "[d]ue to the reapplication process, Plaintiff was denied credit for approximately 20 months of service and her promotion to GS-09 was delayed by over a year." *Id.* at 16. Ms. Montgomery admits that when she was retroactively promoted, she received backpay, but argues that "[r]etroactive pay cannot erase" harms such as "loss of pay, inability to apply for higher-level opportunities, and financial hardship." *Id.* Despite the additional financial hardship Ms. Montgomery faced while receiving a reduced salary, the case she cites supports the opposite conclusion: "[a]n employer may cure an adverse employment action," in that case, low performance ratings and withholding of a bonus, "before that action is the subject of litigation." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003); *see id.* at 1294 ("Because [the supervisor] corrected her error in rating [plaintiff] and increased [plaintiff's] bonus accordingly before [plaintiff] filed suit, there was no unremedied adverse employment action when the suit was filed and the district court properly granted summary judgment in favor of the [defendant].") Regardless, the Court need not rest its decision on this point because Ms. Montgomery has also failed to make the causal connection between having to reapply for her position and the corresponding delayed promotion with discrimination because of her disability.

The parties do not dispute that Ms. McCollum made the decision to have Plaintiff reapply for her position to regularize her appointment. *See* Def.'s Facts ¶ 47. Nor do they dispute that "Plaintiff testified that her disability was not the reason that the Department asked her to reapply to regularize the erroneous appointment." *Id.* ¶ 43; Pl.'s Dep. 55:12–19. And the parties do not dispute that Ms. Montgomery "also testified that her disability was not the reason her credit time and promotion were delayed." Def.'s Facts ¶ 44. But, confusingly, Ms. Montgomery does dispute whether "Ms. McCollum, the decisionmaker in each instance, did not discriminate

against her based on her hearing loss." *Id.* ¶ 45; Pl.'s Facts ¶ 45.  Ms. Montgomery's response

only adds to the confusion.  She states that "Plaintiff only went by Ms. McCollum's email

initially, but later received information showing Ms. McCollum's actions were based on

Plaintiff's Schedule A/disability," and cites to paragraph 32 of her declaration.  Pl.'s Facts ¶ 45.

That paragraph provides, "[i]n October 2021, Ms. McCollum was removed from her position.

Her removal followed continued scrutiny regarding her handling of personnel actions, including

mine."  Pl.'s Decl. ¶ 32; *see also id.* ¶ 29 (declaring that "when viewed in the broader context of

discriminatory conduct, the overall treatment was rooted in animus toward [her] disability and

Schedule A status").  Ms. Montgomery does not describe the nature of this "scrutiny" or provide

further explanation for Ms. McCollum's removal.  This speculation, unsupported by evidence, is

insufficient to create a genuine dispute regarding Ms. McCollum's discriminatory motives to

survive summary judgment.

 The back pedaling does not stop there.  The parties do not meaningfully dispute that the

same reapplication process was used both for employees with disabilities and for those without

disabilities.  *See* Def.'s Facts ¶ 29 ("Notably, at least two of the four individuals who were asked

to reapply were not impaired."); Pl.'s Facts ¶ 29 ("Undisputed.").  Ms. Montgomery argues in

her brief that her promotion delay "was a direct result of the unnecessary reapplication process

and the denial of service credit—both of which disproportionately impacted Plaintiff and other

Schedule A employees."  Pl.'s Opp'n at 16–17.  But if at least half of the employees who were

made to reapply were not impaired, it is unclear how Ms. Montgomery could substantiate her

allegation of a disproportionate impact, and her opposition brief provides no citation to the

record to attempt to do so.  *See id.*  Ms. Montgomery could have cited to her declaration, which

states that the requirement that she reapply for a position to address administrative errors "was

not imposed on similarly situated employees who were not Schedule A." Pl.'s Decl. ¶ 15. Setting aside that this statement is too conclusory to defeat a motion for summary judgment, *see Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999), it also seemingly contradicts her own Response to Defendant's Statement of Material Facts, without explanation, *see* Def.'s Facts ¶ 29; Pl.'s Facts ¶ 29. Ms. Montgomery cannot create a genuine dispute by merely contradicting herself. *See Pyramid Sec. Ltd. v. IB Resol., Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991). Simply put, she has failed to identify a single non-disabled individual whose appointment suffered from similar administrative errors who was not required to reapply for their position, and her conclusory, contradictory assertions are insufficient.

Lastly, even accepting as true that Ms. Horton "stated that Schedule A employees should be terminated; [and] pointedly asked Plaintiff if she had a disability after there was an incident where Plaintiff was yelled at by Ms. Williams and mocked, 'Yeah, she can't hear,'" these statements do not constitute the "direct evidence of discrimination" Ms. Montgomery claims. Pl.'s Opp'n at 13. Ms. Horton and Ms. Williams have "denied having any input into Ms. McCollum's decisions about credit time and promotion," and Defendant has submitted their affidavits to that effect. Def.'s Facts ¶ 58 (citing Ex. 3, Williams Aff. No. 43, ECF No. 38-3; Ex. 4, Horton Aff. No. 49). Ms. Montgomery has failed to point to any contrary evidence supporting that they were involved in any relevant decisions to have Ms. Montgomery reapply for her position or her delayed promotion. *See* Pl.'s Opp'n at 13–14, 16–17. Their mere status as supervisors is insufficient to establish direct discrimination if they were not in some way decision makers. *See Holbrook v. Reno*, 196 F.3d 255, 260 (D.C. Cir. 1999).

Absent evidence that the Department took adverse action toward Ms. Montgomery because of her disability, her disparate treatment claim fails. Accordingly, the Court grants Defendant's motion for summary judgment on this claim.

### C. Hostile Work Environment Claim

"[J]udges in this District ordinarily assume that" the Rehabilitation Act "permits a hostile work environment claim." *Cong. v. District of Columbia*, 324 F. Supp. 3d 164, 169–70 (D.D.C. 2018). "To prevail on such a claim, a plaintiff must show that [her] employer subjected [her] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Courts look to "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.*

Previously, the Court considered both Ms. Montgomery's unpleasant interactions with Ms. Horton and Ms. Williams—which "alone [were] too minor to state a claim"—and "the reapplication process and the failure to receive a performance appraisal" as part of the totality of circumstances and concluded that the hostile work environment claim "narrowly survive[d]." *Montgomery II*, 2024 WL 1344443, at *12–13. But now, having concluded that there is no genuine dispute that the delayed performance appraisal and reapplication process were not motivated by anti-disability animus, the Court finds that Plaintiff has failed to identify evidence sufficient to meet the "high bar" of conduct sufficiently "severe or pervasive" such that it altered the conditions of Ms. Montgomery's employment and created an abusive working environment. *See id.* at *12. Put differently, having determined that the delayed performance appraisal and

reapplication process were not motivated by discriminatory intent, the Court agrees with Defendant that "no reasonable jury could find that the alleged conduct established a hostile work environment."  MSJ at 27.

Ms. Montgomery supports her hostile work environment claim with citations to her responses to Interrogatory Numbers 4 and 8, but Interrogatory Number 8 concerned her late performance appraisal, which as discussed above was not discriminatory.  *See* Pl.'s Opp'n at 18; Ex. 20, Interrogatory Ans. No. 8.  Ms. Montgomery responded to Interrogatory Number 4:

> On October 2, 2018, Cheryl Williams, HR Supervisor stated, "yeah, she cannot hear."  Warren Foster was in the office when Cheryl Williams made that statement regarding my hearing.  Following this conversation, Tanisha Horton, Assistant Human Resources Officer, asked me if I had a disability.  On September 5, 2018, Taneisha Horton, Assistant Human Resources Officer stated, "employees with disabilities who were hired under the Schedule A hiring authority should be terminated."  Shannon Carroll, Lashawna Norman, and Shavonne Taylor all have first-hand knowledge of Horton's statements.

Ex. 20, Interrogatory Ans. No. 4; *compare* Def.'s Facts ¶ 46, *with* Pl.'s Facts ¶ 46 (not disputing that "the only discriminatory statements made were by Ms. Horton concerning Plaintiff's Schedule A status and inquiring as to whether Plaintiff had a disability, and by Ms. Williams on one occasion when she commented about Plaintiff's hearing issue").  As the Court previously explained, a few discrete instances when supervisors made rude comments about Ms. Montgomery's disability fail to establish the kind of severely or pervasively abusive workplace necessary for a hostile work environment claim.  *Montgomery II*, 2024 WL 1344443, at *12–13.  Ms. Montgomery argues that "[t]aken together, the frequency, content, and consequences of these incidents materially altered the conditions of Plaintiff's employment."  Pl.'s Opp'n at 18.  But if anything, these limited occurrences of upsetting comments demonstrate that any hostility was infrequent, and clearly did not prevent Ms. Montgomery from going on to achieve additional promotions in the Department.  *See* Def.'s Facts ¶¶ 40, 42, 44.  The conduct of Ms.

Montgomery's superiors "may have been tactless and ill-mannered," or attributable to an "expression of frustration," but Ms. Montgomery cites to no evidence rising to a "level of malevolence" that would enable a jury to find for her on this claim. *See Brooks v. Grundmann*,748 F.3d 1273, 1277–78 (D.C. Cir. 2014). Accordingly, the Court grants Defendant's motion for summary judgment as to her hostile work environment claim.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 38) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  November 19, 2025                                    RUDOLPH CONTRERAS
                                                            United States District Judge